# In the United States District Court
## for the Southern District of Georgia
### Brunswick Division

|  |  |  |
|---|---|---|
| THE VARIABLE ANNUITY LIFE INSURANCE COMPANY, | : | CIVIL ACTION |
|  | : |  |
| Plaintiff, | : |  |
|  | : |  |
| v. | : |  |
|  | : |  |
| WILLIAM "BOBBY" JOINER and KIMBERLY JOINER, | : |  |
|  | : |  |
| Defendants. | : | NO. CV206-110 |

## O R D E R

Plaintiff, the Variable Annuity Life Insurance Company ("VALIC"), filed the above captioned diversity action against Defendants, William "Bobby" Joiner and Kimberly Joiner, (collectively, the "Joiners"), alleging numerous federal and state claims related to the Joiners' conduct prior and subsequent to tendering their letters of resignation to VALIC. Presently before the Court is VALIC's motion seeking a temporary injunction. Having heard the parties' arguments on

AO 72A
(Rev. 8/82)

May 25, 2006, and after due consideration, VALIC's motion will be **GRANTED**.

## FINDINGS OF FACTS

In rendering its decision, the Court makes the following findings of fact:

1.    The Joiners were employed as financial advisors by VALIC until they tendered letters of resignation on March 21, 2006.

2.    The Joiners are currently employed in the same capacity by Merrill Lynch, VALIC's competitor.

3.    Mr. Joiner began his employment with Merrill Lynch on the same day he tendered his resignation to VALIC.

4.    The Joiners, as VALIC financial advisors, marketed and sold VALIC products, including tax exempt I.R.C. § 403(b) organization group accounts, VALIC's primary market.

5.    As a condition of employment, the Joiners were required to enter into a Registered Agent Agreement ("Agreement") with VALIC Financial Advisors, Inc. ("VALIC advisors").

6.    VALIC, as an affiliated company, has certain rights and protections under the terms of the Agreement.

AO 72A
(Rev. 8/82)

7.    The Agreement further provides that

> Broker-Dealer's and Protected Companies' Trade
> Secrets include, but are not limited to, their
> customer identities and account information and the
> materials, processes, data, documentation, and
> knowledge embodied in SIGHT, AgileNet, and other
> licensed software described in the Computer Schedule.
> Such information is a trade secret, whether contained
> in an electronic, printed or other format, or whether
> committed, in whole or in part, to Registered
> Representative's memory.    .    .    .    Registered
> Represtative shall not, during the term of this
> Agreement, or at any time after its termination,
> disclose or use, directly or indirectly, any Trade
> Secrets of Broker-Dealer or Protected Companies,
> including but not limited to, customer identites and
> account inforamtion, except as required in the
> regular course of Registered Represtative's business
> with Broker-Dealer or Protected Companies.

(Registered Representative Agreement, § 4(g).)

8.    In the two months since the Joiners tendered their

resignations to VALIC, at least 32 accounts belonging to 27

VALIC customers, totaling approximately $4.5 million dollars,

have been rolled out of VALIC accounts to accounts managed by

Merrill Lynch, the Joiners' current employer.

9.    Mr. Joiner concedes that he understood client

identification and account information to be the most valuable

information VALIC owns.

10.    Mr. Joiner concedes that he breached the terms of the

Agreement because he did not believe the non-solicitation

provision was valid.

3

11. Mr. Joiner concedes that he directly solicited 90% of the clients who rolled out accounts from VALIC to Merrill Lynch.

12. Finally, Mr. Joiner concedes that, absent judicial order, he will continue to solicit VALIC individual and group clients to roll their VALIC accounts to accounts managed by Merrill Lynch.

## CONCLUSIONS OF LAW

The Court makes the following conclusions of law:

1. To be entitled to temporary injunctive relief, VALIC must demonstrate: (a) a likelihood of success on the merits of its claim; (b) a substantial threat that it will suffer irreparable harm if an injunction is not granted; (c) that its threatened injury outweighs the harm the injunction might cause the Joiners; and (d) that granting the injunction will not disserve the public interest. Schiavo v. Schiavo, 403 F.3d 1223, 1226 (11th Cir. 2005).

2. The Joiners have breached the terms of the Registered Representative Agreement. Pursuant to the terms of the Agreement, VALIC customer identities and account information are trade secrets and may not be disclosed or used, either

4

directly or indirectly. Mr. Joiner concedes that he has breached the terms of his Agreement with VALIC by soliciting his previous VALIC clients, the identity and account information of which are VALIC trade secrets, to roll their accounts to Merrill Lynch, VALIC's competitor. Thus, VALIC has established a likelihood of success on the merits of its breach of contract claim.

3.    The gravamen of VALIC's argument is that it will suffer irreparable injury if the Joiners are allowed to continue use of VALIC's client identity and account information because VALIC will be deprived of the value of a trade secret in which it has invested significant time and money. VALIC argues that harm resulting from lost accounts and lost customer goodwill and business is irreparable because it is neither easily calculable, nor easily compensable and is, therefore, an appropriate basis for injunctive relief.

4.    VALIC has established a substantial threat that it will suffer irreparable harm if an injunction is not granted. "An injury is irreparable only if it cannot be undone through monetary remedies." Cate v. Oldham, 707 F.2d 1176, 1189 (11th Cir. 1983).

AO 72A
(Rev. 8/82)

5.    The loss of customers and good will is an "irreparable" injury, as it is "difficult, if not impossible, to determine monetarily."    See also Ferrero v. Associated Materials Inc., 923 F.2d 1441, 1449 (11th Cir. 1991) (citing Spiegel v. City of Houston, 636 F.2d 997 (5th Cir. 1981) and finding irreparable harm due to loss of good will and long-time customers).

6.    The Court concludes that the balance of harm tips decidedly toward VALIC.    Mr. Joiner concedes that he directly solicited 90% of the 27 clients who rolled out at least 32 accounts, totaling approximately $4.5 million dollars, from VALIC to Merrill Lynch in the two months since the Joiners tendered their resignations to VALIC.    The solicitation was allegedly conducted in knowing violation of the terms of the Agreement.

7.    The Court finds no convincing evidence in the record that the public interest will be disserved by the requested injunction.    The Joiners assert that the public interest is disserved because clients have a right to choose their financial advisor.  Were VALIC seeking to affect the previously rolled out accounts, the Court would concede that public policy would be implicated.    However, as indicated by VALIC at the preliminary hearing,  and evidenced by the proposed order

AO 72A
(Rev. 8/82)

submitted, VALIC is only seeking to enjoin the Joiners from directly or indirectly using the identity and account information of VALIC clients to induce, either directly or indirectly, <u>future roll outs of VALIC accounts to Merrill Lynch</u>.  (Emphasis added.)  Certainly, a cognizable public interest exists in discouraging employees from breaching their employer's trust and misappropriating proprietary information for their own gain.

## CONCLUSION

Having made the foregoing findings of facts and conclusions of law, the Court concludes that VALIC's motion for temporary injunction (Doc. No. 1) is **GRANTED**.

Pursuant to the Court's findings of fact and conclusions of law, the Court hereby **ORDERS** that the Joiners (and their employees, agents or representatives) shall not:

1.    Directly or indirectly induce or attempt to induce any person who is or was a customer of VALIC or its affiliated companies and who was within the Joiners' assigned territory at any time during the one-year period immediately preceding March 21, 2006, to either (a) end or alter his or her relationship with VALIC or its affiliated companies; and

AO 72A
(Rev. 8/82)

2.    Directly or indirectly use, disclose or transmit (i) information contained in the records of VALIC or its affiliated companies, including clients' names, addresses, account balances, account activity, financial objectives and requirements, and other personal and account information of VALIC clients; (ii) VALIC's marketing plans or other business information; and (iii) other confidential information, trade secrets, and commercially sensitive materials of VALIC or its affiliated companies.

Furthermore, the Joiners shall immediately return to VALIC any property, whether contained on an electronic, printed, or other format, containing any information described in paragraph 2, above.

The injunction is conditioned upon VALIC posting with the Court a bond in the amount of three hundred thousand dollars ($300,000) to be approved by the Clerk of Court, for the payment of such costs and damages as may be incurred or suffered by the Joiners if they are found to have been wrongfully enjoined or restrained.

**SO ORDERED**, this _____26th_____ day of May, 2006.

_____
JUDGE, UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

AO 72A
(Rev. 8/82)