# In the United States District Court
# for the Southern District of Georgia
# Brunswick Division

| | | |
|---|---|---|
| THE VARIABLE ANNUITY<br>LIFE INSURANCE COMPANY, | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| WILLIAM "BOBBY" JOINER<br>and KIMBERLY JOINER, | : | |
| | : | |
| Defendants. | : | NO. CV206-110 |

### O R D E R

Plaintiff, Variable Annuity Life Insurance Company ("VALIC"), brought this action against Defendants, William "Bobby" Joiner and Kimberly Joiner, (collectively, the "Joiners"), alleging the Joiners breached an employment agreement and other legal obligations with VALIC. The Joiners have moved to compel arbitration pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, et seq., the National Association of Securities Dealers, Inc. ("NASD"), and various common law principles. The Court heard oral arguments on June

AO 72A
(Rev. 8/82)

15, 2006. For the reasons set forth below, the Joiners' motion will be **GRANTED**.

**FACTS**

The Joiners were employed as financial advisors by VALIC until they tendered letters of resignation on March 21, 2006. The Joiners are currently employed by Merrill Lynch, a VALIC competitor.

As a condition of employment with VALIC, the Joiners were required to enter into a Registered Agent Agreement ("Agreement") with VALIC's subsidiary, VALIC Financial Advisors, Inc. ("VFA"), an NASD member. The Agreement contained covenants which provided that the Joiners would not disclose or use any trade secrets, including customer identities and account information, except in the regular course of business with VFA or its protected companies.

The Agreement also contained arbitration clauses which provided that the Joiners would settle any dispute with VFA in accordance with the rules of the NASD. With regards to VALIC, a NASD nonmember affiliated company, however, the Agreement provided:

> All other disputes arising from or under the terms of this Agreement, including, without limitation, all

> disputes with any Affiliated Company and/or Protected Company that is not a member of the NASD shall be resolved in a court of competent jurisdiction.

(Pl.'s Opp'n, Ex. 1.)

Mr. Joiner began his employment with Merrill Lynch on the same day he tendered his resignation to VALIC. In the two months since the Joiners tendered their resignations to VALIC, at least 32 accounts belonging to 27 VALIC customers, totaling approximately $4.5 million dollars, have been rolled out of VALIC accounts to accounts managed by Merrill Lynch, the Joiners' current employer. Mr. Joiner concedes that he directly solicited 90% of the clients who rolled out accounts from VALIC to Merrill Lynch.

VALIC filed the instant suit against the Joiners, asserting, inter alia, claims of breach of contract and misappropriation of trade secrets. Contemporaneous with its complaint, VALIC filed an emergency motion for temporary restraining order and motion for preliminary injunction. The Court conducted a hearing on VALIC's motion and, after considering the parties' arguments, concluded that a temporary injunction was appropriate.

On June 5, 2006, the Joiners filed a motion to compel arbitration and stay these proceedings. Pursuant to the

3

Joiners' emergency motion for expedited hearing on the motion, filed on June 8, 2006, the Court heard oral arguments on June 15, 2006. In their motion, the Joiners ask the Court to compel VALIC to arbitrate this dispute pursuant to the FAA and NASD Code of Arbitrate Procedure.

On June 14, 2006, VALIC filed its opposition to the Joiners' motion. VALIC contends that it is not contractually obligated to arbitrate, that it cannot be compelled to arbitrate under the FAA, and that it cannot be compelled to arbitrate under the NASD. VALIC further contends that a stay of these proceedings would thwart its ongoing investigation and necessary discovery to ensure that the Joiners comply with the Court's injunction.

## DISCUSSION

### I. STANDARD OF REVIEW

Motions to compel arbitration are reviewed under the standard for summary judgment found in Fed.R.Civ.P. 56(c). InterDigital Communications Corp. v. Fed. Ins. Co., 392 F.Supp.2d 707, 711 (E.D. Pa. 2005); Institut Pasteur v. Chiron Corp., 315 F.Supp.2d 33, 37 (D. D.C. 2004); Salvadori v. Option One Mortg. Corp., 420 F.Supp.2d 349, 353 (D. N.J. 2006). In

4

interpreting and judging the validity of an arbitration clause, federal courts apply the general state law of contract. Doctor's Assocs., Inc. V. Casarotto, 517 U.S. 681, 686-87, 116 S.Ct. 1652, 1656, 134 L.Ed.2d 902 (1996); E.E.O.C. v. Waffle House, Inc., 534 U.S. 279, 294, 122 S.Ct. 754, 764, 151 L.Ed.2d 755 (2002). In doing so, the court must consider all evidence presented by the party opposing arbitration and construe all reasonable inferences in that party's favor. Salvadori, 420 F.Supp.2d at 353.

## II. FEDERAL ARBITRATION ACT

Congress passed the FAA in 1925, intending to overcome state judicial and legislative resistence to allowing parties to contractually bind themselves to arbitration. Volt Info. Scis., Inc. V. Bd. Of Trs. Of the Leland Stanford Junior Univ., 489 U.S. 468, 476, 109 S.Ct. 1248, 1253-54, 103 L.Ed.2d 488 (1989) ("[T]he federal policy is simply to ensure the enforceability, according to their terms, or private agreements to arbitrate."). Thus, the FAA requires federal courts to enforce written agreements to arbitrate disputes. Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 111, 121 S.Ct. 1302, 149 L.Ed.2d 234 (2001) ("[T]he FAA compels judicial enforcement of a wide range of written arbitration agreements."). However,

AO 72A
(Rev. 8/82)

"[w]hile the FAA expresses a strong federal policy in favor of arbitration, the purpose of Congress in enacting the FAA was to make arbitration agreements as enforceable as other contracts, but not more so." Cap Gemini Ernst & Young, U.S., L.L.C. v. Nackel, 346 F.3d 360, 364 (2d Cir. 2003) (internal quotations and citations omitted). Thus, a court cannot direct parties to arbitrate pursuant to the FAA absent a valid arbitration agreement.

VALIC argues that, under the FAA, the non-arbitration clause contained in the Agreement precludes the Joiners from seeking to compel it to arbitrate the instant dispute. In the Agreement, to which VALIC is a non-signatory, the Joiners and VFA agreed that only disputes "between Registered Representative[s] and Broker-Dealer shall be resolved in accordance with the NASD's Code of Arbitration Procedures." (Agreement § 11(a).) The Agreement further provided that:

> All other disputes arising from or under the terms of this Agreement, including, without limitation, all disputes with an Affiliated Company and/or Protected Company that is not a member of the NASD shall be resolved in a court of competent jurisdiction.)

(Agreement § 11(b)(1).) In light of the discussion below, the Court finds that VALIC's close affiliation with VFA creates, in the very least, an ambiguity as to VALIC's obligation to arbitrate.

6

### III. NASD

In addition to requiring the Joiners to execute an Agreement with VFA, VALIC's subsidiary and a NASD member, VALIC required the Joiners to register with the NASD in order to sell VALIC products. The registration application, entitled "Uniform Application for Securities Industry Registration or Transfer," provided, among other things, that registrants "agree to arbitrate any dispute, claim or controversy that may arise between [the registrant] and [its] firm, or a customer, or any other person, that is required to be arbitrated under the rules, constructions or by-laws of the organization[.]" (See Defs.' Mot. at 4, n.3.)

The NASD has established a Code of Arbitration Procedure ("Arbitration Code") to govern such arbitration proceedings. Rule 10101 of the Arbitration Code establishes the scope of NASD arbitration as any dispute "arising out of or in connection with the business" of any NASD member or the employment activities of associated person(s).[1]  Rule 10201,

---

[1]  Under the Arbitration Code, the following matters are eligible for submission to arbitrate:

> [A]ny dispute, claim, or controversy arising out of or in connection with the business of any member of the [NASD], or arising out of the employment or termination of employment of associated person(s) with any member, with the exception of disputes involving the insurance business of any member which

(continued...)

however, limits the scope of mandatory arbitration to disputes initiated by a specified class of persons against specified classes of persons, and that are "between or among members and/or associated persons, and/or certain others."[2]

Neither the NASD nor the Eleventh Circuit have defined the term "certain others."  However, the Second Circuit Court of Appeals has held that a person who is sufficiently immersed in the underlying controversy may be considered a "certain other" under the Code.  <u>McMahan Sec. Co. L.P. v. Forum Capital Mkts. L.P.</u>, 35 F.3d 82, 87-8 (2d Cir. 1994).  A person who is neither a member nor an associated person is, nevertheless,

---

(...continued)
    is also an insurance company; (a) between or among members; (b) between or among members and associated persons; (c) between or among members or associated persons and public customers or others.

(Pl.'s Opp'n, Ex. 4, Arbitration Code Rule 10101.)

[2]    Under the Arbitration Code, the following matters require submission to arbitrate:

    [a] dispute, claim or controversy eligible for submission under [Rule 10101] between or among members and/or associated persons, and/or certain others, arising in connection with the business of such member(s) or in connection with the activities of such associated person(s), or arising out of the employment or termination of employment of such associated person(s) with such member, shall be arbitrated under this Code, at the instance of: (1) a member against another member; (2) a member against a person associated with a member or a person associated with a member against a member; and (3) a person associated with a member against a person associated with a member.

(Pl.'s Opp'n, Ex. 5, Arbitration Code Rule 10201(a).)

appropriately joined in the arbitration where: that party plays an active role in the securities industry, is a signatory to a securities-industry arbitration agreement (or is an instrument of another party to the arbitration), and has voluntarily participated in the particular events giving rise to the controversy underlying the arbitration. Id. at 88. Thus, a "certain other" may be joined as a party in NASD arbitration if these three conditions are met.

The Court concludes, as a matter of law, that VALIC qualifies as a "certain other" within the meaning of NASD Rule 10201 such that arbitration is appropriate. All of the required conditions outlined in McMahan are met. Both VALIC and VFA play actives roles in the securities industry. Further, VALIC is VFA's "instrument" within the meaning of McMahan. Finally, VALIC and VFA voluntarily participated in the events that gave rise to the controversy underlying the arbitration proceedings. Each of the three conditions set forth in McMahan have been satisfied. As a "certain other," VALIC may be compelled to arbitrate under the Arbitration Code. Although VALIC is a non-signatory to the Agreement, its interests are directly related to and congruent with those of a signatory.

The Court finds VALIC's "insurance exception" argument without merit. NASD Rule 10101 excepts from NASD arbitration "disputes involving the insurance business of any member which is also an insurance company." The Third Circuit held that the Arbitration Code's "insurance exception" demonstrates "one clear expression of intent-that employment disputes are subject to arbitration while intrinsically insurance claims are not." In re Prudential Ins. Co. of Am. Sales Practice Litigation All Agent Actions, 133 F.3d 225, 234 (3rd Cir.), cert. denied, 525 U.S. 817, 119 S.Ct. 55, 142 L.Ed.2d 43 (1998) (reversing district court ruling that insurance business exception exempted retaliation claims from arbitration). Likewise, the Tenth Circuit "conclude[d] that the insurance exception to arbitrability does not include an exception for ordinary employment disputes merely because the defendant employer is an insurance company." Armijo v. Prudential Ins. Co. of Am., 72 F.3d 793, 800 (10th Cir. 1995) (reversing district court ruling that insurance business exception exempted discrimination claims from arbitration). The Fifth Circuit concluded that Title VII claims involved "obligations as an employer rather than an insurer[, and] [a]s such, § 1's insurance business exception [wa]s inapposite[.]" Mouton v. Metro. Life Ins. Co., 147 F.3d 453, 457 (5th Cir. 1998). The

AO 72A
(Rev. 8/82)

court reasoned that "were [it] to conclude otherwise, [it] would render virtually meaningless any arbitration agreements between companies involved in the insurance business and their NASD-licensed employees." Id.

The Court finds the line of reasoning adopted by these courts persuasive. The instant case involves VALIC's obligations as an employer rather than an insurer. Accordingly, the insurance exception is inapplicable.

The Court concludes that arbitration is the appropriate manner in which to resolve this matter. In order to market its annuity products, the SEC required VALIC's representatives to register with the NASD. VALIC should not be permitted to avail itself of the privileges entailed in registration with the NASD — ability to market its annuity products — without similarly being bound by the obligations of such registration. Furthermore, to hold otherwise would result in a needless expenditure of time and resources. As such, a stay of the present action is warranted and the arbitration of all claims is required under the circumstances.

**CONCLUSION**

The Court has read and considered the positions of all parties to this action. For the reasons set forth above, the

11

Joiners' Motion to Compel Arbitration and Stay Proceedings (Doc. No. 25) is **GRANTED**.

Accordingly, the NASD Arbitration Panel is ordered to address and resolve all pending claims between the parties to this litigation in accordance with the NASD Code of Arbitration Procedure. All injunctions are to remain in full force until further order.

**SO ORDERED**, this ____23____ day of June, 2006.

_____
JUDGE, UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

AO 72A
(Rev. 8/82)